UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                           :

JOSE L. LOPEZ,                 :

           Plaintiff,    :

                         :

     - against -      :

                         :

MICHAEL J. ASTRUE,    :
COMMISSIONER OF SOCIAL   :
SECURITY,             :

                         :

         Defendant.   :
------------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/25/09

**OPINION AND ORDER**

**08 Civ. 480 (SAS)**

## I. INTRODUCTION

Jose Lopez brings this action pursuant to the Social Security Act (the "Act"),[1] seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). This decision became the Commissioner's final decision when the Appeals Council denied Lopez's request for review on November 30, 2007.[2]

----

[1]     *See* 42 U.S.C. § 405(g).

[2]     *See* Transcript of the Administrative Record ("Tr."), filed as part of the Commissioner's Answer pursuant to 42 U.S.C. § 405(g) at 4-6.

1

The Commissioner has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The Commissioner argues that the Administrative Law Judge's ("ALJ") finding that Lopez was not disabled and, therefore, not entitled to DIB and SSI benefits during the period under review is supported by substantial evidence and should be affirmed.  Lopez opposes the motion arguing that the ALJ erred because he did not: 1) develop the record with regard to Lopez's mental impairment; 2) give proper weight to the treating physician evidence; and 3) seriously consider the credibility of plaintiff's subjective complaints of pain.  For the following reasons, the Commissioner's motion is granted, the decision denying benefits is affirmed, and this case is dismissed.

## II.    FACTUAL BACKGROUND

The evidence, which is contained in the administrative record, has been summarized by the ALJ in his decision denying benefits.  I will only recount those facts pertinent to this motion.  Lopez alleges that he has been disabled since October 14, 2004, due to herniated discs, hepatitis C, and depression.[3]  Beginning in 1990 and until his alleged onset date, Lopez held various jobs in the

---

[3]    *See* Tr. 85, 94, 100-01, 118-20; 252-53.

2

construction and housecleaning fields such as kitchen helper and forklift operator.[4]

These jobs were unskilled and required exertion at the light, medium, heavy and

very heavy categories.[5]  Medical records from the Dr. Martin Luther King Jr.

Health Center ("MLK Center") and Neighborhood and Family Health Center

("Family Health Center") indicate that Lopez has both herniated discs and

hepatitis-C, impairments which impose significant limitations on his ability to

perform work-related activities.[6]  On May 19, 2005, Lopez claimed that

depression, a new illness, resulted in a partial inability to work.

Medical records show that Lopez does suffer from depression, as

diagnosed by his treating physician and a consulting psychiatrist who evaluated

Lopez in 2005.[7]  However, Lopez has admitted that this condition does not affect

his ability to function.[8]  According to his treating doctor, Lopez is stable as long as

---

[4]     *See id.* 121-27, 246-47.

[5]     *See id.*

[6]     *See* MLK Medical Records and Family Health Center Medical
Records, Exs. 1F and 2F.

[7]     *See* Treating records of Dr. Ricardo Dunner and consulting
records of Dr. Marilee Mescon, Exs. 5F and 11F.

[8]     Report of Contact dated 2/8/05, Ex. 6E.

he remains on his methadone maintenance program. [9] Accordingly, the ALJ found

that the symptoms of which Lopez complained during a psychiatric evaluation

(disturbed sleep, fluctuating appetite, loss of usual interests and feelings of

hopelessness) did not impose any significant limitations on his ability to perform

work-related activities.

## III. LEGAL STANDARDS

### A. Substantial Evidence Standard

When examining an ALJ's decision in a Social Security case, a

district court does not undertake a *de novo* review. [10] A court must not disturb the

Commissioner's final decision if "correct legal standards were applied" and

"substantial evidence supports the decision." [11] "Substantial evidence is 'more

than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" [12] "Where the Commissioner's

---

[9]     Medical Assessment of Ability to do Work-Related Activities
(Physical) from Dr. Dunner, Ex. 8F/5-7.

[10]     *See* 42 U.S.C. §§ 405(g), 1383(c)(3). *See also Schaal v. Apfel,* 134
F.3d 496, 501 (2d Cir. 1998).

[11]     *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). *Accord
Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

[12]     *Halloran*, 362 F.3d at 31 (quoting *Richardson v. Perales*, 402 U.S.
389, 401 (1971)). *Accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

4

decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner."[13]

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."[14] "[E]ven if there is also substantial evidence for the plaintiff's position," if substantial evidence exists to support the Commissioner's decision, the decision must be affirmed.[15] Moreover, the Commissioner's findings of fact, as well as the inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence might differ from the Commissioner's analysis.[16]

---

[13]    *Veino*, 312 F.3d at 586. *Accord Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

[14]    *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

[15]    *Morillo v. Apfel*, 150 F. Supp. 2d 540, 545 (S.D.N.Y. 2001). *Accord Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir. 1990); *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1982).

[16]    *See Rutherford*, 685 F.2d at 62; *Howard v. Astrue*, No. 07-CV-1558, 2007 WL 4326788, at *2 (E.D.N.Y. Dec. 7, 2007).

5

### B.   Five-Step Process

Pursuant to the Act, the Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether a claimant is disabled.[17]   At step one, the ALJ must determine whether the claimant is engaging in substantial gainful work activity ("SGA").   Generally, if the claimant has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he is not disabled given his ability to engage in SGA.[18]   Only if the claimant is not engaging in SGA does the analysis continue.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination thereof that is "severe."[19]   An impairment or combination thereof is "severe" within the meaning of the regulations if it significantly limits the claimant's ability to perform basic work-related activities.   An impairment is "not severe" when the evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's

---

[17]      *See* 20 C.F.R. § 416.920(a).

[18]      *Id.* § 416.920(b).

[19]      *Id.* § 416.920(c).

ability to work.[20]  If the claimant has a severe impairment or combination thereof, the analysis must proceed.

At step three, the ALJ determines whether the claimant's impairment or combination thereof meets or medically equals the criteria of a listed impairment.[21]  If the impairment is contained in the Listings, the claimant is considered disabled.[22]  If not, the analysis continues.

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity ("RFC"),[23] which is his ability to do physical and/or mental work-related activities on a sustained basis despite limitations from impairments.  In making this finding, the ALJ must consider all of the claimant's impairments, including any non-severe impairments.[24]

---

[20]    *Id.*§ 416.921(a).

[21]    *See* 20 C.F.R. Part 404, subpart P, Appendix 1 (the "Listings").  The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *See* 20 C.F.R. § 416.925(a) (the purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity").

[22]    *Id.* § 416.909.

[23]    *Id.*§ 416.920(e).

[24]    *Id.*

7

At step four, the ALJ must determine whether the claimant has the RFC to perform any past relevant work.[25]  Past relevant work refers to work that the claimant has done in the past.[26]  If the claimant is unable to do any past relevant work, the analysis proceeds.  At the last step of the evaluation,  the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.[27]  If the claimant is able to do other work, he is not disabled, but if he is unable to do other work, he is disabled. Although the claimant generally continues to have the burden of proving disability, a limited burden of production shifts to the SSA at this final step.  To support a finding that the claimant is not disabled at this step, the SSA must provide evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can perform, given his RFC, age, education and work experience. [28]

## C.    The Treating Physician Rule

Under the "treating physician" rule, "the medical opinion of a

---

[25]    *Id.*§ 416.920(f).

[26]    *Id.*§ 416.960(b)(1).

[27]    *Id.*§ 416.920(g).

[28]    *Id.*§§ 416.912(g) and 416.960(c).

claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."[29] When a treating physician's opinion is not given "controlling" weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive.[30]   Such factors include the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors which tend to support or contradict the treating physician's opinion.[31] After considering the above factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion."[32]   Failure to provide such " 'good reasons' for not crediting the opinion of a claimant's treating

---

[29]     *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). *See also* 20 C.F.R. § 416.927(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

[30]     *See* 20 C.F.R. § 416.927(d)(2).

[31]     *See* 20 C.F.R. § 416.927(d)(2)(i)-(ii) and (d)(3)-(6).

[32]     *Halloran*, 362 F.3d at 33. *See also* 20 C.F.R. § 416.927(d)(2) (stating that the agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion").

physician is a ground for remand."[33]

## D.     Subjective Complaints of Pain

In assessing credibility, an ALJ may properly reject a claimant's

subjective complaints of pain after weighing the objective medical evidence in the

record, including the opinions of treating physicians, but must set forth his reasons

for doing so with sufficient specificity to enable the reviewing court to decide

whether his decision is supported by substantial evidence.[34]  The ALJ must follow

a two-step process in evaluating the claimant's statements regarding pain:  (1) the

ALJ must consider whether there is an underlying medically determinable physical

or medical impairment that could reasonably be expected to produce the

claimant's pain or other symptoms; and (2) the ALJ must evaluate the intensity,

persistence, and limiting effects of the claimant's symptoms to determine the

extent to which the symptoms limit the individual's ability to do basic work

activities.[35]

---

[33]      *Snell*, 177 F.3d at 133.  *Accord Schaal*, 134 F.3d at 505
("Commissioner's failure to provide 'good reason' for apparently affording no
weight to the opinion of plaintiff's treating physician constituted legal error.").

[34]      *Malone v. Barnhart*, 132 Fed. App'x 940, 942 (2d Cir. 2005); *Lewis
v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999).

[35]      *See* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2.

In addition, if the claimant's subjective complaints of pain are not supported by objective medical evidence, the ALJ must consider several factors in assessing the claimant's credibility including: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any measures the claimant uses or has used to relieve pain or other symptoms, and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. [36]

## IV.   DISCUSSION

### A.   Development of the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the

---

[36]     See 20 C.F.R. § 416.929(c)(3)(i)-(vii); see also SSR 96-7p, 1996 WL 374186, at *3; Yancey v. Apfel, 145 F.3d 106, 109 n.6 (2d Cir. 1998); Buske v. Astrue, No. 5:07-CV-120, 2009 WL 211560, at *11 (N.D.N.Y. Jan. 26, 2009).

11

administrative record."[37]   Here, the record contains sufficient evidence to determine whether plaintiff has limitations due to a mental impairment. Additional development of the record was therefore unnecessary.[38]   Plaintiff mistakenly asserts that the ALJ did not properly develop the record with regard to his mental impairment.[39]   Plaintiff applied for disability benefits based on "herniated [discs], back pain,"[40] and "back spine problems and hep[atitis] c." [41]   A disability claims representative, V. Perricone, reported on March 8, 2005, that a letter was sent to plaintiff seeking clarification as to whether he was claiming disability due to depression.[42]   Plaintiff explained that he had participated in a methadone program for two to three months and that "the psych aspect does not affect his functioning."[43]   Moreover, the medical evidence from plaintiff's treating

---

[37]     *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982). *Accord Burger v. Astrue*, 282 Fed. App'x 883, 885 (2d Cir. 2008).

[38]     20 C.F.R. § 416.927(c)(1).

[39]     *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl. Mem.") at 12.

[40]     Tr. 85.

[41]     *Id.* 100.

[42]     *See id.* 129.

[43]     *Id.*

12

physician is consistent with plaintiff's statement. Plaintiff was treated by Dr.
Dunner, who first saw him on January 6, 2005.[44] Dr. Dunner prescribed
medications including Zoloft, an anti-depressant. [45]  But notably, Dr. Dunner did
not diagnose plaintiff with depression.[46] On August 25, 2005, Dr. Dunner
described plaintiff's functional abilities, but specifically opined that he had no
difficulty in mental work-related activities.[47]  Thus, where plaintiff and his treating
physician agree that there are no limitations, the ALJ was not required to seek
further information regarding plaintiff's mental condition.

Even if plaintiff had limitations from a mental impairment, the
medical evidence shows that they were insignificant and non-severe.  Plaintiff was
examined by Dr. Cicarell, a consultative psychologist, on March 28, 2005.[48]  Dr.
Cicarell noted depressed mood and moderately depressed affect, but all other

---

[44]     *Id.* 172.

[45]     *Id.*

[46]     *See id.*

[47]     *See id.* 204-07, 209-10.

[48]     *See id.* 190-93.  A consultative physician's opinion may serve as
substantial evidence in support of an ALJ's decision. *See Monguer v. Hecker,* 722
F.2d 1033, 1039 (2d Cir. 1983) (citing *Miles v. Harris*, 644 F. 2d 122, 124 (2d Cir.
1981)).

13

examination results were normal.[49]  Dr. Cicarell diagnosed plaintiff with a

depressive disorder, not otherwise specified, and opined that plaintiff had a

"limited to fair" ability to respond appropriately to supervision, co-workers, and

work pressures in a work setting.[50]  Likewise, Dr. Walia, a State agency

psychologist, reviewed the evidence and opined that, based on the record,

plaintiff's impairments were not severe.[51]  Accordingly, the reports and opinions

of the consulting psychologists were also consistent with plaintiff's statement

about his mental functioning.

      In any event, the ALJ reasonably based his decision on the record

before him.  The SSA attempted to obtain records from Narco Freedom, plaintiff's

methadone treatment center, but there was no response to the request.[52]  Plaintiff's

attorney stated at the hearing that plaintiff "also received psychiatric treatment at

Narco Freedom, aside from his methadone [treatment]," and that he was awaiting

records from that source.[53]  The ALJ told plaintiff's attorney "if you have any

---

[49]    *See* Tr. at 190-93.

[50]    *See id.* 192.

[51]    *See id.* 200.

[52]    *See id.* 211.

[53]    *Id.* 250, 253.

14

trouble, you let me know, and I'll subpoena stuff; but I'm going to rely on you to get the records."[54]   But the only medical evidence submitted after the hearing was from Rafael Torres, a physical therapist.[55]   Nor is there any documentation showing that plaintiff's attorney contacted the ALJ to request a subpoena.   In circumstances such as this, the ALJ was not required to develop the record any further.[56]

### B.   Treating Physician Rule

Plaintiff's assertion that the ALJ did not properly weigh the opinions of Dr. Dunner is also mistaken.[57]   First, the ALJ considered a number of factors relating to Dr. Dunner's opinions, including the length, nature, and extent of the treatment relationship; frequency of examination; support of opinions afforded by medical evidence; consistency of the opinion with the record; and specialization.[58] The ALJ noted that Dr. Dunner was plaintiff's "primary treating physician"[59] and

---

[54]   *Id.* 250.

[55]   *See id.* 223-27.

[56]   *See* 20 C.F.R. § 416.912(e)(2).

[57]   *See* Pl. Mem. at 13-15.

[58]   *See* 20 C.F.R. § 416.927(d)(2).

[59]   *Id.*

that his last opinion was dated November 1, 2006.[60]   Clearly, the ALJ was well aware of the length, nature, and extent of the treatment relationship and knew of the frequency of examinations.

The ALJ also considered the support of the opinions afforded by the medical evidence and the consistency of Dr. Dunner's opinions with the record as a whole.[61]   Specifically, in discussing Dr. Dunner's August 25, 2005 opinion, the ALJ stated that it was supported by "a preponderance of the evidence."[62]   When he disregarded that portion of Dr. Dunner's opinion relating to asthma, the ALJ reasoned "there is no evidence of a diagnosis for asthma found anywhere on the record."[63]   Thus, consistency and support were clearly considered by the ALJ when he weighed whether Dr. Dunner's opinions were controlling.

Contrary to plaintiff's contention that the ALJ's explanation is inadequate,[64] the ALJ properly explained his rejection of Dr. Dunner's November 1, 2006 opinion.   The ALJ stated that there was nothing in the record to support an

---

[60]     *See* Tr. 22.

[61]     See 20 C.F.R. § 416.927(d)(2).

[62]     Tr. 22.

[63]     *Id.*

[64]     *See* Pl. Mem. at 14-15.

16

opinion of such extreme limitations.[65]  He further explained that "Dr. Dunner did not give any reasons for this opinion of greatly reduced functional capacity in relation to his first assessment completed approximately one year earlier."[66]  The ALJ further reasoned that Dr. Dunner "only indicated that the claimant has impaired sleep, weight change and muscle spasm."[67]  Put simply, Dr. Dunner's November 2006 opinion was not supported by the evidence.  The ALJ was permitted to reject it on that basis alone. [68]

Nor is there any merit to plaintiff's contention that the ALJ substituted his own opinion for that of a competent medical professional. [69]  On the contrary, the ALJ did not substitute his own opinion for Dr. Dunner's.  Rather, he reasonably rejected one of Dr. Dunner's later opinions in favor of an earlier one.  Thus, the ALJ properly gave controlling weight to the August 25, 2005 opinion of Dr. Dunner because it was well-supported by medically acceptable

---

[65]     *See* Tr. 22.

[66]     *Id.*

[67]     *Id.*

[68]     *See* 20 C.F.R. § 416.927(d)(2) (treating source opinions will be found controlling when they are "well-supported" by medically acceptable evidence).

[69]     *See* Pl. Mem. at 14 ("The law is clear that an ALJ may not capriciously set his own opinion against those of physicians who present competent medical evidence.").

17

clinical and objective medical evidence and was consistent with other evidence in the record. Accordingly, the ALJ did not violate the treating physician rule.

## C.   Plaintiff's Subjective Complaints of Pain

Finally, plaintiff complains that the ALJ relied too heavily on his daily activities in finding that his subjective complaints of pain were not fully credible.[70] As an initial matter, it is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomatology.[71]

In any event, an ALJ is permitted to consider an individual's activity level in assessing credibility. The ALJ will consider "all of the medical and non-medical information" in determining credibility, [72] including a claimant's "daily activities."[73] In this case, the ALJ properly considered plaintiff's ability to go

---

[70]     See Pl. Mem. at 15-17.

[71]     See Mimms v. Secretary of Health and Human Servs., 750 F.2d 180, 186 (2d Cir. 1984); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995).

[72]     20 C.F.R. § 416.929(e).

[73]     20 C.F.R. § 416.929(c)(3)(i). See also Rosado v. Shalala, 868 F. Supp. 471, 472-73 (E.D.N.Y 1994) (an ALJ may rely on a claimant's activities of daily living as substantial evidence in support of his determination).

18

outside, watch television, listen to the radio, read, play cards and dominos, bathe, shower, cook, clean, go shopping, do laundry, make his bed, dust and iron.[74] Contrary to plaintiff's assertions, the ALJ properly identified the basis for his finding on credibility.[75] The ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." [76] In making this finding, the ALJ properly considered all of plaintiff's subjective complaints.[77] In addition to comparing plaintiff's complaints to his daily activities, the ALJ also compared other factors including his medication and his use of a cane and analgesics to control his pain.[78] In sum, the ALJ properly determined that plaintiff's subjective complaints were not fully credible and sufficiently set forth the grounds in support of this finding.

## V.   CONCLUSION

After carefully examining the ALJ's decision and the administrative record, this Court finds that substantial evidence in the record supports the ALJ's

---

[74]   *See* Tr. 19, 112-14, 120.

[75]   *See* Pl. Mem. at 15-16.

[76]   Tr. 19.

[77]   *Id.*

[78]   *Id.* 19, 21.

decision. Moreover, the ALJ thoroughly examined the record, giving appropriate weight to all of the medical evidence, including the treating physician's findings. Because I find that the ALJ's decision is supported by substantial evidence, the Commissioner's  motion is granted and the ALJ's decision is affirmed.  The Clerk of the Court is directed to close this motion (Document # 8) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              March 25, 2009

20

## -Appearances-

**For Plaintiff:**

Rannylin S. Dalley, Esq.
Piard Dalley, PLLC
1916 Park Ave, Suite 614
New York, New York 10037
(212) 281-2232

**For Defendant:**

Susan C. Branagan
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2804

21